R. V. PEARSON v. L. R. WILSON.

1. CONTESTED ELECTIONS. *County office. Appeal. Bond.*
   Under the act of March 5, 1878 (Acts 1878, p. 173), no appeal from the special tribunal which tries a contested election for a county office can be taken without an appeal bond for costs; and this is not altered by the statute which provides for *supersedeas.* Acts 1880, p. 125.

2. SAME. *Appeal bond. Failure to execute. Amendment.*
   The appeal cannot be amended in the Circuit Court by executing the bond required by the former statute in a case where the only bond given was the one for *supersedeas* authorized by the latter.

3. SAME. *Justice of the peace. Failure to qualify. Official acts.*
   Verdict and judgment, rendered by the special tribunal after the expiration of the justice's official term, bind the contestants, if being reelected he continues in possession of the office exercising its functions, although his attempt to qualify anew is frustrated.

4. SAME. *Special court. Injunction. Reorganization.*
   The fact that the contestant and justice of the peace desist from proceeding, in obedience to a void injunction issued by the Chancery Court at suit of the defendant, does not prevent the special tribunal from reassembling after dissolution of the writ, and concluding the case.

5. SAME. *Official bond. When given by contestant.*
   The requirement that official bonds shall be given within a specified time does not apply to the contestant until the termination of the contest, when, if he has a verdict not appealed from, the proper officers should approve his bond.

ERROR to the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

At the general election, on the first Tuesday in November, 1879, the plaintiff in error received a certificate of election to the office of sheriff of Yalobusha County, and during the same month was commissioned. The defendant in error, the opposing candidate, filed a petition, under the act of March 5, 1878 (Acts 1878, p. 173), to contest the election, before J. S. Reasons, a justice of the peace. Summons for Pearson and jury process were issued returnable Nov. 29, 1879. On that day the case was continued by consent, and so, from

time to time, until Dec. 10, 1879, when the justice and Wilson
were served with an injunction, issued, under a fiat of Chan-
cellor Fly, from the Chancery Court of the county, on a bill
which Pearson had filed. They obeyed the writ, and the
special tribunal dispersed.  J. S. Reasons, whose term of office
expired on the first Monday of January, 1880, was re-elected at
the same general election, and, having received his commis-
sion for the new term, to begin on that day, presented his
bond to a deputy in the office of the chancery clerk, who,
owing to the contest for the latter office (*Ex parte Wimberly,
ante,* 437), refused to approve the bond, telling him to wait
until that contest was decided.  On Feb. 16, 1880, Wilson
tendered his bonds as sheriff and tax collector to A. T. Wim-
berly, the chancery clerk, who rejected them upon the ground
that they were not in time.  After the result in the Wimberly
case, the injunction in this case was dissolved, and on Feb.
19, 1880, the special tribunal reassembled, when Pearson
pleaded to the jurisdiction, and denied the power of Reasons
to resume the subject; but his objections were overruled, and
the case proceeded to a verdict for Wilson, on Feb. 28, 1880,
and he was soon after commissioned.  On Wednesday, March
3, Pearson presented to the justice a petition and affidavit
for appeal to the Circuit Court, and a bond, approved by
the Chancellor, in the penalty of five hundred dollars, condi-
tioned to pay Wilson all damages which he might sustain by
reason of such appeal should the contest be finally decided in
his favor.  The magistrate refused to approve the bond, but in-
dorsed upon it " This bond filed and appeal prayed for on the
3d day of March, 1880."  Wilson, on May 17, 1880, presented
a sheriff's bond and tax collector's bond to the chancery clerk
and the president of the board of supervisors, and they refused
to justify the sureties, upon the ground that the bonds were too
late.  Both contestants acted as sheriff, Wilson holding the
rooms and Pearson the books and papers, and process was exe-
cuted at either establishment after the first Monday in January,
1880.  When the Circuit Court met, in May, 1880, each ex-
pressed a willingness to perform his official duties in connec-
tion therewith, and Pearson moved to amend his appeal, so as
to give an appeal bond in a penalty of three hundred dollars,

conditioned for costs. When the foregoing facts were developed, Pearson's motion was overruled, and the service of the court devolved upon Wilson. Both parties agree that this court, *pro bono publico*, shall settle all the questions in controversy.

*Fitz Gerald & Whitfield*, for the plaintiff in error.

1. The tribunal created by the statute is a special one, unknown to the ordinary judicial system, and must die with the occasion that brought it into being. The justice of the peace presides not by virtue of his functions as such, but only because designated by the statute. When organized, the court has no terms, and cannot continue the case, and its adjournment or dispersion under the injunction destroyed it. It could not be reassembled. *Ex parte Wimberly, ante,* 437. Pearson is not estopped to make this defence. The essential elements are wanting. *Turnipseed* v. *Hudson,* 50 Miss. 429; *Staton* v. *Bryant,* 55 Miss. 261; *Sulphine* v. *Dunbar,* 55 Miss. 255; *Davis* v. *Bowmar,* 55 Miss. 671; *Dorlarque* v. *Cress,* 71 Ill. 380; Herman on Estoppel, 223, 245, 291, 334; Bigelow on Estoppel, 438, 467. The injunction was a nullity, and as it imposed no penalties if disregarded, so it conferred no rights if obeyed. Respecting the nullity entitles Wilson to no additional consideration. *Mattox* v. *Hightshue,* 39 Ind. 95; *Sublett* v. *Bedwell,* 47 Miss. 267; *Crisler* v. *Morrison, ante,* 791.

2. Under the Act of March 2, 1880 (Acts 1880, p. 125), the person returned as elected is required to give only one bond on appeal. The intent of the statute is that he shall hold the office until the contest is finally decided. A bond for "damages" includes costs. *Gayden* v. *Marshall,* 8 S. & M. 489; *Baggett* v. *Beard,* 43 Miss. 120; *Edwards* v. *Bodine,* 11 Paige, 223. As the contestant never gets the office until the contest is determined, he is required to give only a cost-bond. If the person in possession is required to give two cost-bonds, the legislature, contrary to its plain intention, is placed in the absurd attitude of requiring an unnecessary thing. Such a construction will never be adopted. *Dixon* v. *Lacoste,* 1 S. & M. 700; *New Orleans Railroad* v. *Hemphill,* 35 Miss. 17; *McIntyre* v. *Ingraham,* 35 Miss. 25. If the cost-bond was

requisite, Pearson should have been allowed to amend by giving it in the Circuit Court. *Green* v. *Boon*, *ante*, 617. Under the ruling in *Allen* v. *Standifer*, *ante*, 612, the fact that such bond had not been executed earlier does not change the result. An affidavit was made and a bond given within the time, so that the appeal of Pearson, who did every thing in his power, was at most only defective.

3. Wilson is clearly not the sheriff. He has never qualified. Until Feb. 16, 1880, he made no effort to qualify. His first bond was presented more than thirty days after the first Monday in January. Under Code 1871, § 319, if Pearson was not sheriff, the office was vacant. Under the decision in *Vasser* v. *George*, 47 Miss. 713, Wilson was ineligible, and that goes to the merits of the controversy under the act of 1878. The act of April 19, 1873 (Acts 1873, p. 76), prescribes no new time within which the contestant shall qualify, and if the general provision, requiring all official bonds of county officers to be given within thirty days after the first Monday in January succeeding the election, does not apply, he must be governed by the Code. The bond of Feb. 16, 1880, does not fall within the statute, because at that time Wilson was not a " contestant," and is also inoperative, because it was never approved and the sureties never justified. If the act of 1873 is construed to mean that the contestant shall give bond within thirty days after the termination of the contest, and the appeal was void, the bond of May 17, 1880, was too late, because the verdict on Feb. 28, 1880, was, in that view, an end of the matter.

*W. P. & J. B. Harris*, on the same side.

1. Pearson was returned elected, qualified, was commissioned within the proper time, and entered upon the duties of the office. At that time there was no obstacle to his investiture in accordance with the Constitution and laws, and, if nothing has since occurred to destroy his title, he is now sheriff. It is immaterial how the consequence of obeying the injunction is characterized. It was a voluntary submission to an illegal order of a court having no power to issue it. It has been recently decided by this court that the order was a nullity, and might have been disregarded with impunity. *Ex parte Wimberly*, *ante*, 437. In that case it

was held that to concede such power to the Chancery Court
was to put it out of the power of the special court to perform
its appropriate function in the time and manner required
by the statute for the object in view; that such were the
limitations under which the special court was placed, that
to interfere with it by an indefinite postponement tended
to subvert the statute and destroy the court. It must have
been in the mind of the legislature that the justice's term
of office might expire with that of the sheriff. In short the
idea of the special tribunal undergoing an eclipse for an
indefinite time, — until after the commencement of the politi-
cal year, — and then emerging to resume motion, seems op-
posed to any rational notion of the legislative intent. In
the case of *Crisler* v. *Morrison*, *ante*, 791, these suggestions
took the form of a positive judgment that time was, in the
matter of the contested election, of the essence of the pro-
ceeding ; that it confined the action of that tribunal in such
a way that it could not go out of the time fixed for its organi-
zation, which was twenty-five days from the day of election,
and that the act of the justice in postponing the return-day
beyond the twenty-five days took away the jurisdiction so
completely that the writ of prohibition was applicable. It is
impossible to put the loss of jurisdiction in a stronger light.
There is no difference between that kind of postponement and
a postponement by a continuance to a stated period in the
future, and an indefinite postponement. The motive of the
justice could not change the effect of his act, and it could
make no difference that the postponement was asked by one
or both of the parties. The question is one of power in the
tribunal over the subject.

2. The doctrine of estoppel cannot be invoked. It would
go no further than consent. In a certain class of cases parties
have been held to have precluded themselves from assailing
the title of an officer. Sureties on a sheriff's or tax collector's
bond have not been permitted to question the title of the offi-
cer in actions on the bond ; and in England it has been
held that a corporator, who has concurred in the installation of
an officer of the corporation, cannot be a relator in a *quo war-*
*ranto* proceeding. *Queen* v. *Greene*, 2 Q. B. 460. In the case

of *Turnipseed* v. *Hudson*, 50 Miss. 429, the subject was discussed. These cases do not furnish precedents for decision on the question as to the effect of the conduct of parties on the power of a tribunal created by statute to determine a public question committed to it. If we had the case of an agreement between the contesting parties after the initiation of the proceedings, that it might stand over for three months, the justice entering it on his minutes, no court would uphold the proceeding which might take place at the end of that time, if it should appear that, pending this so-called suspension, the certified officer-elect qualified when his term began. The case is not stronger than the one we have. The justice could not of his own will postpone the case until after the term commenced, nor could the consent of parties give to such action any validity. *Green* v. *Creighton*, 10 S. & M. 159; *Lester* v. *Harris*, 41 Miss. 668. The mere conduct of parties, as indicating acquiescence, their failure to answer, and the like, can furnish no legal ground for a departure from the statute. *Dorsey* v. *Barry*, 24 Cal. 449; *Lindsey* v. *Luckett*, 20 Tex. 516; *Searcy* v. *Grow*, 15 Cal. 117. The modes pointed out for determining the title to office are in their nature public actions. The contested election is especially a matter of public concern, although it is conducted in the names of the claimants of the office. Whether the proceeding is initiated, as it is here, by a claimant, or whether it shall be open to any elector, as in California and Texas, the proceeding is a public cause. The verdict controls all functionaries, high and low. It is, perhaps, the best example of those judgments, determining facts not thereafter to be disputed by any party in any cause, a public judgment *in rem*, settling a matter for the people at large. It is above contract, consent or estoppel. It has the force of the registrar's certificate unquestioned in the statutory mode.

3. Wilson is not the sheriff for another reason. No construction can be given to the act of 1873 which would authorize him to tender a bond at any time after a verdict in his favor. That act has merely changed the time from which the thirty days is to be computed, and we must compute here from the time at latest that he might qualify. If there

were no appeal, it would run certainly from the expiration of the five days within which an appeal is allowed, or twenty days for the bond conditioned for damages. Giving the longest period, the 17th of May makes it too late. A tender of a bond before the verdict was ineffectual. The effect of holding that there was no appeal is to hold that there was no obstacle to the giving of a bond.

4. It is very clear that, if there was one bond covering both costs and damages, that would suffice to uphold the appeal. Both bonds, if two are required, are payable to the same person, and there does not appear to be any objection to combining the two into one, both being intended to indemnify the same party. Where it is at all doubtful whether the justice approved and the bond appears to be good, it would be a harsh ruling to hold that it did not save the appeal, if delivered and filed.

*A. H. Whitfield* and *W. P. Harris*, on the same side, argued orally.

*Nugent & McWillie*, for the defendant in error.

1. The law on the subject of contested elections contains no provision as to continuances from day to day and the time during which the proceeding is to be determined. Time is of the essence only as to the commencement of the proceeding. In view of the great public importance of the question involved, — whether the voice of the people has been falsely and fraudulently misrepresented, — the legislature has provided that the controversy shall be commenced within twenty days after the election, and that the issue as to who received the greatest number of legal votes cast shall be made up and tried by a jury. Beyond that, the statute is silent. The issue must be determined as speedily as possible. The dominant thought is a trial on the merits, whenever a case is properly commenced. The tribunal must proceed to the end before it can become *functus officio*. It is left to the prudence and good sense of the courts to regulate the rules of practice and course of procedure, each case depending upon its peculiar facts. Acts 1878, p. 173. In the case at bar, the jurisdiction had attached, and could only be exhausted when there was a verdict on the issue joined. Otherwise, the jurisdiction, granted by

law and fairly acquired, to try the case on the special issue of fact may be lost, not because of any provision of the statute violated in the progress of the cause, but because of some illegal act on the part of the contestee. That the controversy is one in which the public is interested intensifies the view. The public is but an aggregation of individuals; and it is conceded that, as to a contest between individuals purely, the rule is as we state.

2. The plaintiff in error cannot take advantage of the plea that the Chancellor was without jurisdiction to grant the injunction. He consummated the wrong; he procured the illegal writ; he deliberately took advantage of it; he had it executed, and stood by it to the end; he affirmed the jurisdiction of the Chancery Court in a sworn bill; and now asks this court to consider it all a sham, a device to trick an adversary. Can this be allowed? The current of authority is against the proposition. The Court of Appeals of Kentucky said that the admission of such a plea would " have more extensive evil consequences than at first blush can be seen," and that it would be unjust and iniquitous to allow it. *Stevenson* v. *Miller*, 2 Litt. 306; *Hanna* v. *McKenzie*, 5 B. Mon. 314. The rule is, that a party who improperly commences an action, and derives all the benefit he intends from his suit, cannot avoid the responsibility which he incurs by his misfeasance. *Turner* v. *Billagram*, 2 Cal. 520; *Flanigan* v. *Turner*, 1 Black, 491; *Jermain* v. *Langdon*, 8 Paige, 41; *Giles* v. *Halbert*, 12 N. Y. 32; *Hawkins* v. *Hall*, 3 Ired. Eq. 280; *Cohen* v. *Broughton*, 54 Ga. 296; *Fahnestock* v. *Gilham*, 77 Ill. 637; *First National Bank* v. *Warrington*, 40 Iowa, 528; *Willis* v. *Willis*, 59 Tenn. 183; *Pickett* v. *Merchants' National Bank*, 32 Ark. 346; *Hooker* v. *Hubbard*, 102 Mass. 239; *Mariner* v. *Milwaukee Railroad Co.*, 26 Wis. 84; *Fowler* v. *Stevens*, 29 La. Ann. 353. Because in a strictly legal, technical sense, the injunction was void, being issued in a cause wherein the Chancellor was without jurisdiction, it is said that obedience to it cannot be pleaded so as to save the tribunal. It was a nullity which should have been treated with contempt. It was a harmless thunderbolt in one sense, but it was the duty of the officers to whom it was addressed to obey it promptly, unhesitatingly

and without restraint.   If they disobeyed, they incurred the
hazard of a proceeding for contempt, and provoked a profit-
less and unseemly conflict with the Chancery Court.   While
they could have disobeyed it with comparative impunity, they
should have respected it until dissolved in the usual way.
*State* v. *Weed,* 1 Foster, 262; *Watson* v. *Watson,* 9 Conn. 140;
*Sandford* v. *Nichols,* 13 Mass. 286; *Davis* v. *Wilson,* 65 Ill. 525.
The *status quo* must be re-established; the delay cannot
be imputed to the contestant or the public; the contestee must
bear that burden alone.   By this course no law is contravened,
and no provision of the special statute on this subject violated;
the spirit of the law is preserved, and its letter untouched;
justice is done, and the popular will respected.

3. No appeal was taken from the verdict of the jury.   The
act of March 5, 1878 (Acts 1878, p. 173), provides for an appeal
to be taken within five days and a trial *de novo* in the Circuit
Court, on condition precedent that a bond in the penalty of
three hundred dollars be given for the payment of all costs.
The execution of this bond in strict conformity with the statute,
and its approval by the justice, are the conditions of the appeal,
and the things essential to the jurisdiction of the appellate
court.   *Bowie* v. *Hagan,* 5 How. 13; *Hardaway* v. *Biles,* 1 S.
& M. 657; *Eustis* v. *Holmes,* 48 Miss. 34; *Winters* v. *Claitor,*
54 Miss. 341.   The statute of 1878 provides that there shall
be no *supersedeas,* but the act of March 2, 1880 (Acts 1880, p.
125), authorizes *supersedeas* in favor of the party returned as
elected, if applied for within twenty days from the time of the
appeal, upon his giving a bond, in the penalty prescribed by
the Chancellor, conditioned to pay the contestant all dam-
ages which he may sustain by reason of such appeal should
said contest be finally decided in favor of said contestant.
This latter bond is to be approved by the Chancellor who
fixes the penalty, and manifestly contemplates a case in which
an appeal has been perfected according to the provisions of the
act of 1878.   The bond given by the plaintiff in error was a
*supersedeas* bond, and the magistrate properly refused to ap-
prove it as an appeal bond.   It was not in the penalty pre-
scribed by law, and was not conditioned to pay all costs; it
was approved by the Chancellor as a *supersedeas* bond.   But

as there was, and had been, no appeal taken, the *supersedeas* bond was inoperative, and the plaintiff in error is idly vexing the court and his opponent with a useless and expensive litigation.

*W. L. Nugent*, on the same side, made an oral argument.

*H. M. Sullivan*, on the same side, argued orally and filed a a brief.

1. Obedience to the injunction did not extinguish the jurisdiction of Reasons's court.  Pearson, who sued out the writ, is estopped to make that defence, even if it was void.  Bigelow on Estoppel, 463, 518, 525.  It is not necessary to an equitable estoppel that the party should wilfully intend to mislead, or that the party who claims the estoppel should have acted affirmatively on it.  It is sufficient if he has been induced thereby to refrain from such action as lay in his power by which he might have retained his position and saved himself from loss.  *Voorhis* v. *Olmstead*, 66 N. Y. 113.  Formerly, the doctrine of estoppel was considered odious, but in this more enlightened age that wholesome doctrine is gaining favor with the courts, and our own Supreme Court, in the case of *Staton* v. *Bryant*, 55 Miss. 261, said that no precise rule as to what constitutes an estoppel can be prescribed by the courts, but each case must be considered, and the doctrine applied or not, according to its peculiar circumstances.  To rule out Wilson in this unceremonious manner is not to administer substantial justice, to do which, as was said in *Allen* v. *Standifer*, *ante*, 612, is the tendency of modern and enlightened jurisprudence.  But, apart from the estoppel, the court was not precluded from reassembling by obedience to the injunction.  The case of *Ex parte Wimberly*, *ante*, 437, does not so hold, but merely mentions the question as one which might arise.  *Crisler* v. *Morrison*, *ante*, 791, is not in point. The cases of *Lindsey* v. *Luckett*, 20 Tex. 516, and *Dorsey* v. *Barry*, 24 Cal. 449, were decided under the statutes of those States, and do not bear on the question.  Wilson is not chargeable with any negligence, but has made all possible speed.  Every presumption should be indulged in favor of jurisdiction.  *Townsley* v. *Sumrall*, 2 Peters, 170; *Philadelphia Railroad Co.* v. *Stimpson*, 14 Peters, 448; *Cocke* v.

*Halsey,* 16 Peters, 71. Again, the court will not give such an interpretation to a statute as will defeat it, but will construe it, if necessary, even against the letter, to carry out its spirit and object. *Allen* v. *Standifer, ante,* 612. Yet to allow a litigant to defeat the jurisdiction of the court by force, fraud or stratagem, would defeat the object for which this law was enacted, the public choice would be unascertained, the public interest and private rights lost.

2. The failure of Reasons to give bond and qualify under his new election does not affect his official acts. Code 1871, § 1296, provides that justices of the peace shall hold for the period of two years and until their successors are qualified. But if it be contended that this statute is unconstitutional, in that it undertakes to extend the term of office limited by the Constitution, then we say: Reasons was commissioned; that gave him color of title to the office; he was in the undisputed possession and discharge of its duties and functions. Hence he was a justice of the peace *de facto,* and his acts were as valid as if he were such *de jure,* so far as the public and third persons are concerned. Code 1871, § 317; *Kimball* v. *Alcorn,* 45 Miss. 151; *Brady* v. *Howe,* 50 Miss. 607; *Taylor* v. *State,* 51 Miss. 79; *State* v. *Cooper,* 53 Miss. 615; *People* v. *Collins,* 7 Johns. 549; *Fowler* v. *Bebee,* 9 Mass. 231; *Keyser M'Kissan,* 2 Rawle, 139; *Benjamin* v. *Armstrong,* 2 S. & R. 392; *Beard* v. *Cameron,* 3 Murph. 181; *Lyon* v. *State Bank,* 1 Stew. 442; *Taylor* v. *Skrine,* 3 Brev. 516; *Plymouth* v. *Painter,* 17 Conn. 585; 7 Bacon's Abr. 283. Reasons, however, as matter of fact, tendered a good bond to the proper officer, whether that officer was *de jure* or *de facto* chancery clerk.

3. The failure of Wilson to give bond and qualify within thirty days from the first Monday in January, 1880, did not, under the Code of 1871, *ipso facto* vacate the office, and he would remain in office until the board of supervisors declared the office vacant, and before such declaration he could at any time give bond. *State* v. *Cooper,* 53 Miss. 615; *Harris* v. *State,* 55 Miss. 50; *James* v. *State,* 55 Miss. 57. But the act of 1873, p. 76, is conclusive that, in case of a contest, the law requiring official bonds to be given within thirty days from the com-

mencement of their term of office does not apply to contest-
ants. Nevertheless, Wilson executed and tendered a bond
to Wimberly, the chancery clerk, on February 16, 1880,
which he declined to approve, assigning as the only reason
therefor that the bond was not presented in time. Again,
on May 17, 1880, a perfect bond, with perfect security, was
presented by Wilson to Wimberly and the president of the
board of supervisors for approval, and it was not approved for
the same reason. All Wilson could do was to make a good
bond and tender it. He could not compel, even by mandamus,
the approval of it. He could simply compel action. He could
not, by mandamus, control the discretion of those officers as to
approval or non-approval. Wilson has, therefore, done all that
he was legally required to do in this respect, and more.

4. There was no appeal, because Pearson gave no appeal
bond. It was not even a defective appeal bond subject to
amendment, but the bond given was a *supersedeas* bond.
Appeals are allowed by statute; they are not allowed as a
matter of constitutional right. To constitute an appeal, the
appellant must give bond, with security approved by the
court below, and the bond, as well as the security, must be
approved by the court, and all the requirements of the statute
must be strictly complied with, or the appeal will be void and
the appellate court will have no jurisdiction. *Porter* v.
*Grisham*, 3 How. 75; *Hardaway* v. *Biles*, 1 S. & M. 657;
*Winters* v. *Claitor*, 54 Miss. 341. These requirements are
conditions precedent to jurisdiction, even in ordinary cases
and in ordinary courts. But Reasons's court was a special one,
and in *Saunders* v. *Haynes*, 13 Cal. 145, it is held that the
statute intended " to afford a new and summary remedy in cases
of contested elections." So said our Supreme Court in *Ex parte
Wimberly* and in *Crisler* v. *Morrison*, *ubi supra*, and it is a
cardinal rule that in summary proceedings the law must
be strictly pursued. Sedgw. on Stat. and Const. Law,
319; *Dorsey* v. *Barry*, 24 Cal. 449. Under the statutes
(Acts 1878, p. 173, and the amendatory act of 1880), neither
party can appeal to the Circuit Court without filing an
affidavit and giving a bond for costs in a penalty of three
hundred dollars within five days. The amendment could not

be made, because there was nothing to amend. The Circuit Court had no jurisdiction by virtue of the attempted appeal. *Winters* v. *Claitor*, 54 Miss. 341; *Kramer* v. *Holster*, 55 Miss. 243.

*W. S. Chapman*, on the same side.

Wilson is manifestly entitled to the office, because: 1. The magistrate's special court had jurisdiction of the case from its inception to the conclusion. The Chancellor's injunction suspending its action did not destroy its functions and the judgment was not void for this reason. *Ex parte Wimberly, ante*, 437. The magistrate's failure to qualify after his election, but entering on his official duties by virtue of his election and commission, did not affect the rights of third persons. Code 1857, p. 138, art. 194; Code 1871, § 317; *Cooper* v. *Moore*, 44 Miss. 386; *Kimball* v. *Alcorn*, 45 Miss. 151; *Brady* v. *Howe*, 50 Miss. 607; *Vicksburg* v. *Lombard*, 51 Miss. 111. 2. Wilson tendered his bonds in time. Acts 1873, p. 76. And he has the further time to give bonds, after a final adjudication of the suit by the highest judicial tribunal and until the office is declared vacant. *Harris* v. *State*, 55 Miss. 50. The requirement that the bond shall be executed in thirty days is directory, and if given by the person elected after that time, before the office is declared vacant, it would be in time. 3. Pearson never appealed. By the amendatory act of March 2, 1880 (Acts 1880, p. 125), two courses were open to him. He could appeal and not give his *supersedeas* bond, in which event Wilson would take the office pending the contest; or give that bond, in which case he would retain the office, provided he appealed. He did neither, but, giving the *supersedeas* bond alone, never gave an appeal bond. No amendment was allowable, because the court had no jurisdiction.

*Fant & Fant*, on the same side.

The three hundred dollar appeal bond was a condition precedent to the appeal. Acts 1878, p. 174. As it was not given, the Circuit Court could do nothing but dismiss. There was no jurisdiction. *Kramer* v. *Holster*, 55 Miss. 243. Wilson is then sheriff, by virtue of the verdict and the commission issued thereon, on his compliance with law. He has not lost his right by failure to qualify heretofore. Acts 1873,

p. 76.   The position that the verdict is a nullity, because Reasons's term of office had expired, is untenable in view of his attempt to qualify; and, in any event, his acts as a *de facto* officer are binding.   *Cooper* v. *Moore*, 44 Miss. 386; *Kimball* v. *Alcorn*, 45 Miss. 151; Code 1871, § 317.   Neither is the judgment of the special court void by reason of the injunction.   When the judgment was entered the tribunal was organized to try a subject-matter of which it had jurisdiction, and the parties were before it, and therefore its determination is not void.   Pearson is estopped to say so, even if it was void; and, if he could make the defence, it would avail him nothing, for Wilson is the sheriff in possession.

CAMPBELL, J., delivered the opinion of the court.

The appeal by Pearson from the finding of the jury before the justice of the peace was void, because he gave no appeal bond, which was a condition precedent to an appeal.   The bond prescribed by Chancellor Fly, and approved by him, to operate as a *supersedeas*, is not an appeal bond or a substitute for it. The Circuit Court properly refused the application for leave to amend the appeal, by giving a proper appeal bond.   The act of March 5, 1878 (Acts 1878, p. 173), requires, as a condition of the right of appeal, the giving of a bond, within five days, " in the sum of three hundred dollars, to be approved by the justice, payable to the opposite party, conditioned for the payment of all costs."   This requirement is unaffected by the act of March 2, 1880 (Acts 1880, p. 125), which provides for the appeal to operate as a *supersedeas* upon terms therein prescribed.   No appeal bond having been given, or attempted to be given, there was nothing to amend.   A defective appeal bond might perhaps have been amended, but the entire failure to give one could not be supplied by the Circuit Court.   To do that would be to acquire jurisdiction by the action of the Circuit Court, whereas the law requires that an appeal prayed, and an appeal bond approved, by the justice, within five days, shall give jurisdiction of the case to the Circuit Court.

Reasons, the justice of the peace before whom the proceeding to contest the election was instituted, by virtue of his reelection to the office at the general election in November,

1879, and his attempt to qualify, and his continuance in possession of the office and exercising its functions, is to be considered as capable of the performance of valid official acts binding as such on all persons interested therein.  The justice of the peace and all concerned did right to obey the injunction. Although it was afterwards held to be void, and that it might have been safely disregarded, those who respected the command of the State, made with a show of authority, are not to be punished for taking the safe course of obedience to its process. The interruption of the proceedings and suspension of the functions of the tribunal engaged in the process of organization for the trial of the contest, by the service of the injunction, did not destroy or extinguish it.  The effect was as if a night or a non-judicial day had intervened.  The proceedings were interrupted, not abandoned.  The tribunal about to be organized was hindered, not destroyed.  As soon as the hindering cause was removed, or what seemed to be a hinderance was found to be no real obstacle, it was proper to proceed as if nothing had occurred to interfere with the proceeding.

· The official bonds presented by Wilson for approval on Feb. 16 and on May 17 were in time.  The election being contested, the requirement to qualify within a prescribed time did not apply until the termination of the contest.  We perceive no obstacle to the induction of Wilson into the office. The proper officers should proceed, without delay, to examine and approve the bonds required by law and presented by him for approval.  The tribunal provided by law for the trial of the contest of the election, although hindered and delayed by shrewd devices, under color of legal process, at length proceeded with its duties, and a jury found that Wilson had the greatest number of legal votes at the election.  This is the mode prescribed by law for ascertaining who had the greatest number of legal votes, and the finding must be respected as true, until reversed in the manner provided for by law.  That manner is by appeal to the Circuit Court, to be taken in a prescribed way.  It is the misfortune of Mr. Pearson that there was misapprehension as to the requirement of law for taking an appeal, and that, by non-observance of the law applicable to his case, he lost the opportunity afforded him by

law to test the correctness of the finding of the jury. This is no more than has often occurred to other litigants, and though much to be regretted is without remedy in his case as in any other. Such is the law applicable to all alike, and it is the duty of all citizens to uphold and maintain it, as in it is found the safeguard of the rights of every one.

*Judgment affirmed.*